**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DANIEL MULIADI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:09-cv-1045-N |
| | § | |
| MICHAEL J.  ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on June 5, 2009.  The

findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his

signature thereto, are as follows:

Procedural History: On May 2, 2006, plaintiff Daniel Agus Muliadi (hereinafter

"Plaintiff" or "Muliadi") filed applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI"), alleging a disability onset date of June 2, 2005.

(Administrative Record (hereinafter "Tr." at 9, 134-144)).  He alleged disability due to a seizure

disorder and mental retardation.  (Tr. 178).  His claim was denied by the state agency initially

and on reconsideration, after which he requested a hearing before an Administrative Law Judge

("ALJ").  (Tr. 9).  A hearing was held before the ALJ on September 22, 2008, at which Plaintiff

appeared with counsel and testified on his own behalf.  (Tr. 21-88).  The ALJ also received the

testimony of medical experts ("ME") Dr. Sterling Moore, M.D. and Dr. Alvin Smith, Ph.D.;

vocational expert ("VE") Mr. Russell B. Bowden; and Ms. Patty Muliadi, the plaintiff's sister, a witness for the Plaintiff.  *Id*.  On November 4, 2008, the ALJ denied Plaintiff's request for benefits.  (Tr. 9-16).  Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on April 10, 2009, the Appeals Council denied his request for review.  (Tr. 1-4).  Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review.  *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).  Plaintiff filed his federal complaint on June 5, 2009.  Defendant filed an answer on September 4, 2009.  On December 3, 2009, Plaintiff filed his brief, followed by Defendant's brief on January 27, 2010, and Plaintiff's reply on February 11, 2010.

Standard of Review - Social Security Claims:  When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence.  *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment.  *Villa*, 895 F. 2d at 1022 (citations omitted).  Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive.  *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

Discussion:      To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505, 416.905(a).  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform.  *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This burden may be satisfied by expert vocational testimony or other similar evidence.  *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step four.  He found that Plaintiff had a combination of severe impairments, to wit: "epilepsy, obstructive sleep apnea, depression and cognitive - borderline range (IQ in 70's)", but that the combination of his impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 11).  The ALJ found that Muliadi retained the residual functional capacity ("RFC") to: "lift/carry

3

frequently up to 10 pounds, stand/walk 6 hours of an 8 hour workday, sit 6 hours of an 8 [hour] workday, no ropes, ladders, scaffolds, balancing, climbing or heights, no work with hazardous machinery, minimal reading and writing, simple repetitive jobs, no detailed or complex instructions and incidental verbal communication."  (Tr. 13).  He found that Muliadi was capable of performing his past relevant work as an "assembler/packer", (Tr. 15), and therefore was not disabled.  Muliadi argues that the ALJ failed to apply the appropriate legal standards in evaluating his severe mental impairments at steps 3 and 4 of the sequential evaluation process, prejudicing him at steps 4 and 5 of the process by refusing to allow Plaintiff's counsel to pose a hypothetical to the VE, and that the ALJ failed to properly assess his credibility.

At step 3 of the sequential evaluation process, the ALJ found that Muliadi had a combination of severe impairments, to wit: "epilepsy, obstructive sleep apnea, depression and cognitive - borderline range (IQ in 70's)", but that he did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 11 at ¶¶ 3 and 4).  Regarding Muliadi's mental impairments, the ALJ set out his reasons for finding that Muliadi did not meet listings 12.04, affective disorders, or 12.05, mental retardation.  (Tr. 12-13).

In his findings that Plaintiff did not suffer impairments which met or were the medical equals of listings 12.04 and 12.05, the ALJ did not identify the specific evidence on which he relied for his conclusions.  Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible.  *Eg., see Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  However before the absence of

4

reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless.  *Id.*, *citing Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988) and *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

In his reply at 2, Muliadi claims that he is not mentally retarded, observing that the activities in which he had engaged, including his school and the absence of any diagnosis of mental retardation, precluded such a finding.  Consistent with this position, the ALJ found that the criteria for determining whether Plaintiff suffered from mental retardation, *i.e.* listing 12.05, had not been met.

Although Dr. Alvin Smith rendered an opinion with respect to listings 12.02 and 12.04 (Tr. 70), the ALJ's decision makes no mention of or assessment under listing 12.02.

There is no hard an fast rule as to the degree of specificity required in an ALJ's findings other than that set out in 42 U.S.C. § 405(b)(1).  As reiterated in *Audler* irrespective of any error in applying the law, the critical question is whether the substantial rights of a claimant have been affected.  As related in the court's opinion, the record in *Audler* contained medical reports of the plaintiff's treating physician[1] which contained uncontroverted findings and which, if accepted by the ALJ, would have satisfied the criteria for meeting a listing for finding her to be disabled.  Because the ALJ did not address or discuss the opinions of the treating physician the court found that the substantial rights of Ms. Audler were adversely affected.

---

[1] Since the records were those of a treating doctor, § 404.1527(d) would have required the ALJ to set out the reasons for rejecting the opinions expressed by the physician.

5

In the present case, the ALJ's decision did not evaluate Plaintiff's impairment under listing 12.02, notwithstanding Dr. Smith's comments that having reviewed the records,[2] he concluded that the impairments did not satisfy the criteria under any listing including 12.02 and 12.04 (Tr. 68-70). Guided by the standard described in *Audler*, the question is whether there was evidence in the record which was either unaddressed by the ALJ's decision or which, if accepted, stated a basis to establish a disabling impairment under listing 12.02.

Muliadi cites the reports of Drs. Leilani Oana, Ph.D., (Tr. 340-344), Dr. George R. Mount, Ph.D., (Tr. 436-438), and Dr. Gregg D'Angelo, Ph.D., (Tr. 460-464), to show the presence of factors sufficient to meet the 12.02 listing.

Under 12.02, the required level of severity is met when either (1) the criteria of both paragraphs "A" and "B" are satisfied, or (2) when the requirements of paragraph "C" are satisfied. Paragraph A may be satisfied by a "[d]emonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence" of "[d]isorientation to time and place", "[d]isturbances in mood", or "[e]motional lability", among others. Paragraph B may be satisfied by showing marked limitations or repeated episodes of decompensation in at least two of the four mental functioning areas. Alternatively, Paragraph C may be satisfied through a medically documented history of a "chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities..." and a current history of "1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

---

[2] Dr. Smith specifically referred to the reports of Dr. D'Angelo and Dr. Mount in his testimony, although the latter, whose report is Ex. 17F (Tr. 435-459), is erroneously identified in the transcript as Dr. Malcolm (phonetic).

6

None of the reports suggests that Plaintiff's mental state satisfies the criteria in paragraph "C" of listing 12.02.  Nothing in Dr. Oana's report purports to qualify any mental disorders in terms of the descriptions under paragraphs "A" and "B" of listing 12.02.  Dr. D'Angelo did not use these descriptions in articulating his observations of Muliadi and concluded with the recommendation that he was likely capable of competitive employment with some qualifications or limitations.  Dr. Mount identified two described conditions under paragraph "A" (Tr. 449) and three conditions under paragraph "B" in the range between "moderate" and "marked" (Tr. 456).

The ALJ considered Dr. Mount's report, (Tr. 14), but found that Dr. Smith's opinion that Plaintiff did not have a mental impairment which met or equaled a listed impairment was consistent with the evidence.  *Id*.  While the listings on which the ALJ made findings did not include listing 12.02, paragraph "B" in listing 12.04- on which a finding was made- contains the identical described conditions to those found under paragraph "B" of 12.02.  Under the circumstances it is clear that the ALJ found the opinion of Dr. Smith to be more persuasive than that of Dr. Mount to the extent that their views were conflicting, on paragraph "B" in listings 12.02 and 12.04.  The court can make a meaningful review of the decision, and because there is substantial evidence to support the Commissioner's decision, Plaintiff's request for a remand on this basis is without merit.

At step 4, the ALJ determined that Muliadi had the RFC to perform his past relevant work as an assembler / packer, a position Muliadi held at an AT&T / Lucent Technology plant from July 1999 to February 2001.  (Tr. 72).  In 2001 Muliadi left the plant to provide in-home care for his ailing mother, which he performed from October 2001 until her death on June 2, 2005.  (Tr. 31, 49-51, 71-72).  He stated that he would have been willing to reapply for work at

the plant following his mother's death, but the plant had shut down.  (Tr. 49-51).  Prior to

working at AT&T, Muliadi's only other work experience was as a grocery sacker / deli clerk at

Kroger from 1991 to 1999.  (Tr. 35-36).

In his hypothetical to the VE, the ALJ included the following, characteristics and

limitations: "In regards to reading and writing in the RFC, minimal reading and writing, bare

minimum, no working at heights, no working with hazardous machinery, simple, repetitive jobs.

That is to say no detailed work and no complex work.  Public contact would be limited to only

incidental and not, no public contact where there would be the necessity to have any kind of

extensive verbal communications..."  (Tr. 73-74).  The ALJ also mentioned a limitation on

carrying heavy objects due to "work inexperience and the possibility in that learning new types

of work carrying heavy objects could create a dangerous situation for him."  *Id*.  Subject to those

limitations, the VE testified that Plaintiff would be capable of performing his past relevant work

as an assembler / packer.  (Tr. 74).

In his decision, the ALJ referred to the VE's testimony, stated that it was consistent with

information in the Dictionary of Occupational Titles (DOT), and found: "In comparing the

claimant's residual functional capacity with the physical and mental demands of this [past

relevant] work [as an assembler / packer], the undersigned finds that the claimant is able to

perform it as actually and generally performed."  (Tr. 15).

Muliadi complains of the ALJ's refusal to permit his attorney to pose hypothetical

questions to the VE based upon a portion of Dr. Mount's report.  (Tr. 82-83; *see also* Dr.

Mount's report at Tr. 445-446).  The Medical Source Statement is itself extremely vague with

the ratings in a continuum between 2 and 3.  Thus his argument that Dr. Mount's report showed

8

that he suffered a "serious interference" with his ability to understand and carry out instructions is not supported by the record. Despite the fact that the ALJ may have interfered with counsel's examination, Plaintiff has not demonstrated that had his attorney been permitted to ask the VE, Mr. Bowen, hypothetical questions based upon Dr. Mount's report, that the VE would have changed his opinion regarding Muliadi's ability to engage in his prior work as an assembler and that the ALJ would have found that he in fact suffered from the impairments described in the hypothetical question(s). Absent such a showing he cannot establish prejudice. *Eg., see Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

With respect to the weight / credibility which the ALJ gave to the medical records and Plaintiff's testimony relating to sleep apnea, he claims that the ALJ erred in finding that his testimony was not credible to the extent that it was inconsistent with the RFC which the ALJ found. *(See ¶ 5 at Tr. 13).* In his brief Plaintiff cites portions of his testimony at the administrative hearing with respect to sleep apnea. (Plaintiff's brief at 22-23). Defendant, on the other hand, cites other statements which Muliadi made in the course of the hearing as well as testimony by Dr. Sterling Moore which had a bearing on his sleep disorder. (Defendant's brief at 34-36). While arguably there is some conflict as to whether this condition was disabling, the weight to be given to the evidence is a function which is reserved to the ALJ, and because there is substantial evidence to support the ALJ's determination the fact that he found Plaintiff's testimony to be not wholly credible fails to establish grounds for reversal.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the decision of the Defendant be

affirmed and that Plaintiff's complaint be dismissed with prejudice.

Signed this 8th day of April, 2010.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.